**No. 15-2119**

# In the United States Court of Appeals for the Fourth Circuit

_____

MICHAEL T. DREHER,
on behalf of himself and all others similarly situated,
*Plaintiff-Appellee,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the Eastern District of Virginia

_____

**PETITION FOR REHEARING EN BANC**

_____

Deepak Gupta
Jonathan E. Taylor
Richard J. Rubin
Gupta Wessler PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
*deepak@guptawessler.com*

*Counsel for Plaintiff-Appellee*

# TABLE OF CONTENTS

Table of authorities ........................................................................... ii

Introduction and Rule 35(b)(1) Statement ............................................. 1

Statement ....................................................................................... 3

    A.   Factual background ............................................................... 3

    B.   Statutory background ............................................................ 3

    C.   This litigation ..................................................................... 4

Reasons for granting rehearing en banc ............................................... 6

    I.   The panel's heightened informational-injury requirement conflicts with longstanding Supreme Court precedent. ......................................... 6

    II.   The panel's decision is in direct conflict with the law of other circuits as well as district courts in the Fourth Circuit. ........................... 9

    III.   The panel's decision fails even on its own terms—by overlooking the real-world value of the information at issue—and should, at a minimum, be modified. ..................................................... 13

    IV.   The panel's decision will threaten enforcement of disclosure requirements enacted by Congress in a range of contexts—from FOIA to consumer and environmental protection. ............................... 15

Conclusion ..................................................................................... 17

i

# TABLE OF AUTHORITIES

## Cases

*American Canoe Association, Inc. v. City of Louisa Water & Sewer Commission*,
  389 F.3d 536 (6th Cir. 2004)...................................................................... 9

*Carlson v. United States*,
  837 F.3d 753 (7th Cir. 2016)...................................................................... 11

*Church v. Accretive Health, Inc.*,
  654 Fed. App'x 990 (11th Cir. 2016)....................................................... 11

*Dalton v. Capital Associated Industries, Inc.*,
  257 F.3d 409 (4th Cir. 2001).................................................................. 3, 4

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014)............................................................... 6, 12

*Federal Election Commission v. Akins*,
  524 U.S. 11 (1998) ................................................................................ 1, 7

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016).................................................................. 10

*Grant v. Gilbert*,
  324 F.3d 383 (5th Cir. 2003)...................................................................... 9

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) ........................................................................ 1, 6, 16

*Heartwood, Inc. v. U.S. Forest Service*,
  230 F.3d 947 (7th Cir. 2000)...................................................................... 9

*In re Nickelodeon Consumer Privacy Litigation*,
  827 F.3d 262 (3d Cir. 2016)...................................................................... 11

*Johnson v. MBNA America Bank, NA*,
  357 F.3d 426 (4th Cir. 2004).................................................................... 14

*Public Citizen v. Department of Justice*,
  491 U.S. 440 (1989) ...................................................................... 1, 7, 16

*Salt Institute v. Leavitt,*
    440 F.3d 156 (4th Cir. 2006) .................................................................. 12

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ................................................................*passim*

*Syed v. M-I, LLC,*
    853 F.3d 492 (9th Cir. 2017) .............................................................. 11

*Thomas v. FTS USA, LLC,*
    2016 WL 3653878 (E.D. Va. 2016) ................................................... 12

*Waterkeeper Alliance v. EPA,*
    853 F.3d 527 (D.C. Cir. 2017) ........................................................... 10

*Witt v. Corelogic Saferent,*
    2016 WL 4424955 (E.D. Va. 2016) ................................................... 12

**Statutes**

15 U.S.C. § 1681g(a) ....................................................................... 4, 5, 13

**Legislative materials**

115 Cong. Rec. 2,412 (1969) ................................................................. 4

116 Cong. Rec. 35,940 (1970) ............................................................... 4

**Other authorities**

Cass R. Sunstein, *Informational Regulation and Informational Standing:* Akins
    *and Beyond*, 147 U. Pa. L. Rev. 613 (1999) .......................................... 15

## INTRODUCTION AND RULE 35(B)(1) STATEMENT

Taken at face value, the panel's decision is directly in conflict with precedent of the Supreme Court and other circuits on a constitutional question of exceptional importance. If allowed to stand, it will sow confusion in the courts below and threaten enforcement of a range of disclosure laws enacted by Congress—from the Freedom of Information Act to environmental and civil-rights laws.

The panel held that someone who is denied information to which she is statutorily entitled lacks Article III standing unless she can prove that—in addition to being denied information that Congress deemed important enough to require its disclosure—she *also* suffered an additional concrete injury stemming from the denial. But decades of Supreme Court precedent hold otherwise. Under the doctrine of informational injury, which the Court has repeatedly reaffirmed, plaintiffs need not "show more than that they sought and were denied" information to which they are statutorily entitled. *Pub. Citizen v. Dep't of Justice*, 491 U.S. 440 (1989); *see FEC v. Akins*, 524 U.S. 11, 20-25 (1998); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982). Indeed, the Court reiterated this understanding just last year, explaining that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016).

1

By demanding that plaintiffs do exactly that, the panel opinion contradicts Supreme Court precedent. It also conflicts with decisions of this and other circuits—none of which has ever held that a plaintiff lacks standing to vindicate his statutory right to receive information. Worse, the panel invoked separation of powers and respect for the political branches to reach its unprecedented conclusion. But, by thwarting vindication of legislatively conferred rights, the panel's decision actually undermines Congress.

If it is not set right, the consequences of the panel decision could be profound and far-reaching. While this plaintiff seeks to vindicate important disclosure rights under the Fair Credit Reporting Act, the opinion is not so limited. It could be applied to gut enforcement of any other statute that seeks to protect people by mandating the release of information for a specific reason.

In fairness, it is possible that the panel may not have meant what its opinion says. At a minimum, this Court should modify the opinion to eliminate any suggestion of a new two-part test that "requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." Op. 13. That test, if taken at face value, drains the informational-injury doctrine of any independent meaning, by finding standing only where it would otherwise exist absent any informational injury.

2

## BACKGROUND

**1. Factual background.** In 2010, Michael Dreher discovered that someone had stolen his identity and opened a credit card in his name two years before. He learned of the identity theft when the National Security Agency (while processing the Top Secret security clearance he needed for his job) notified him that his credit report listed a delinquent account under the name "Advanta Bank"—an account that he did not open and had never heard of.

Over the next year, Dreher requested credit reports from Experian on three separate occasions. Each showed a delinquent "Advanta" account. He repeatedly tried to contact both Advanta and Experian to correct the debt. To no avail: Experian directed him to contact Advanta while providing a P.O. Box as its only contact information, and Advanta never responded to his letters.

Eventually Dreher learned that Advanta didn't exist. A different company, CardWorks, had started servicing Advanta credit-card accounts before his identity was stolen. But Experian did not disclose this information to Dreher—or any other consumer with an Advanta account—because CardWorks asked Experian to withhold the information. Experian obliged.

**2. Statutory background.** "Congress enacted [the] FCRA in 1970 out of concerns about abuses in the consumer reporting industry." *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 414 (4th Cir. 2001). "Congress found that in too

3

many instances [consumer reporting] agencies were reporting inaccurate information," often without consumers' knowledge. *Id.* And even if consumers learned of an error, they usually had "difficulty in correcting inaccurate information" because of skewed market incentives: "a credit reporting agency earns its income from creditors or its other business customers"—the same entities it relies on to obtain credit information—and "time spent with consumers going over individual reports reduces . . . profits." 115 Cong. Rec. 2,412 (1969).

With the FCRA, Congress sought to change this, including "a variety of measures designed to insure that agencies report accurate information." *Dalton*, 257 F.3d at 414-15. One is the requirement that agencies, upon request, "clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request," as well as "[t]he sources of the information." 15 U.S.C. § 1681g(a)(1)(2). By giving consumers the right to access the information in their files—and to know where it came from—the statute allows consumers to confirm that the information is accurate, and tells them whom to contact (or sue) if it's not. Congress determined it "necessary to give consumers a specific statutory right to acquire such information on sources" because it "may be the only way in which the consumer can effectively" correct mistakes. 116 Cong. Rec. 35,940 (1970).

**3. This litigation.** In 2011, Dreher brought this case challenging Experian's policy as a willful violation of the FCRA's requirement that reporting

4

agencies disclose all "sources of information" in a credit report. 15 U.S.C. § 1681g(a)(2). The district court certified the case as a class action, and later granted summary judgment to the class. It held that class members have standing because the FCRA gives them "the right to receive certain information from consumer reporting agencies, including the sources of information on their credit reports," "the violation of which causes an informational injury that can be redressed in federal court." ECF No. 25, at 2, 7. On the merits, the court held that "Experian's decision to intentionally omit CardWorks"—as "CardWorks specifically requested"—"so obviously violated" the statute as to be willful. *Id.* at 2, 4. "Experian easily could have disclosed both Advanta and CardWorks"—the industry practice—but instead chose to defer to CardWorks. *Id.* at 15.

A panel of this Court reversed. The panel did not express disagreement with the conclusion that Experian willfully violated the FCRA by failing to disclose information to which Dreher was entitled. Instead, the panel determined that he lacked standing to challenge that violation. The panel acknowledged the long line of precedent recognizing informational injury, but held that "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." Op. 13.

5

## REASONS FOR GRANTING REHEARING *EN BANC*

### I. The panel's heightened informational-injury requirement conflicts with longstanding Supreme Court precedent.

The panel's opinion contradicts longstanding Supreme Court precedent recognizing that the denial of a statutory right to receive information—in the form and manner required by Congress—is sufficient to establish Article III injury.

**A.** For decades, "[t]he Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute." *Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014). The Court's recognition of informational injury as a basis for standing dates back to at least *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). There, the Court held that the recipient of false housing information had standing to challenge the deprivation of "her statutorily created right to truthful housing information"—even though she had no "intention of buying or renting a home" and "fully expect[ed]" to "receive false information." *Id.* at 374. The Court explained that someone "who has been the object of a misrepresentation made unlawful" by the fair-housing statute "has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.* at 373-74. She need not show any additional harm. The inability to prove further injury "does not negate the simple fact of injury" by the misrepresentation itself. *Id.* at 374.

6

The Court reached a similar conclusion several years later, in *Public Citizen v. Department of Justice*, 491 U.S. 440 (1989). It held that a plaintiff had standing to challenge DOJ's failure to provide access to certain information, the disclosure of which was allegedly required by the Federal Advisory Committee Act, because the inability to obtain such information "constitutes a sufficiently distinct injury to provide standing to sue." *Pub. Citizen*, 491 U.S. at 449. In so holding, the Court looked to its "decisions interpreting the Freedom of Information Act," which "have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records," because the denial of information by itself constitutes a concrete harm. *Id.*

The Court reiterated the point in *Federal Election Commission v. Akins*, 524 U.S. 11 (1998). That case (as the Court put it last term) "confirm[ed] that a group of voters' 'inability to obtain information' that Congress had decided to make public is a sufficient injury in fact to satisfy Article III." *Spokeo v. Robins*, 136 S. Ct. 1540, 1549 (2016) (citing *Akins*, 524 U.S. at 20-25). The Court's decision in *Spokeo*, which cites both *Public Citizen* and *Akins* approvingly, further entrenches the concept of informational injury in the Court's Article III case law, reaffirming that "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified" in creating the right to information in the first place. 136 S. Ct. at 1549.

7

**B.** The panel's decision cannot be reconciled with any of these cases. It holds that someone denied information to which he is entitled by statute may not challenge that denial unless he can *also* identify "a concrete injury stemming from [the] allegedly incomplete or incorrect information." Op. 3. Under the panel's novel two-prong test, "a constitutionally cognizable informational injury requires [1] that a person lack access to information to which he is legally entitled *and* [2] that the denial of that information creates a 'real' harm with an adverse effect." Op. 13. But the Supreme Court has made clear that the denial of a statutory entitlement to information is itself a "real" harm sufficient to confer standing. By requiring "*additional* harm beyond the one Congress has identified," *Spokeo*, 136 S. Ct. at 1549—in other words, *two* Article III injuries—the panel's test effectively robs the concept of informational injury of any meaning, contrary to Supreme Court precedent.

The panel did not explain how its test is consistent with the Supreme Court's long-held understanding of informational injury. Instead, it sought to distinguish *Public Citizen* and *Akins* on their facts, asserting (at 16) that they "involved the deprivation of information that adversely affected the plaintiffs' conduct." But nothing in those opinions suggests that the plaintiffs' standing hinged on their reason for seeking the information. And the Court's holdings indicate the opposite. As for *Havens*, the panel said nothing at all. But there can be little doubt that, had

8

the Supreme Court applied the panel's test, the standing inquiry would have come out differently.

## II. The panel's decision is in direct conflict with the law of other circuits as well as district courts in the Fourth Circuit.

The panel's decision also creates an irreconcilable split with the prevailing law of other circuits. Even before *Spokeo*, the circuits had uniformly concluded that a deprivation of a statutory right to information satisfies Article III. *See, e.g.*, *Am. Canoe Ass'n v. City of Louisa Water & Sewer Comm'n*, 389 F.3d 536, 542 (6th Cir. 2004) (holding that the ongoing failure to comply with monitoring and reporting requirements of the Clean Water Act created informational injury); *Grant v. Gilbert*, 324 F.3d 383, 387 (5th Cir. 2003) ("The 'inability to obtain information' required to be disclosed by statute constitutes a sufficiently concrete and palpable injury to qualify as an Article III injury-in-fact."); *Heartwood v. U.S. Forest Serv.*, 230 F.3d 947, 952 n.5 (7th Cir. 2000) (holding that failure to perform a NEPA-required assessment creates "a cognizable injury-in-fact for plaintiffs who are deprived of this information").

Since *Spokeo*, the circuits have stayed this course. The panel's contrary approach is thus at odds with recent decisions of the D.C., Third, Seventh, Ninth, and Eleventh Circuits—all of which have held that a plaintiff deprived of information to which she is statutorily entitled has suffered a concrete injury. Unlike the panel opinion, none of these circuits has required a showing of "any

9

*additional* harm beyond the one Congress has identified." *Spokeo*, 136 S.Ct. at 1549. The panel's demand that plaintiffs show an "adverse effect" from a denial of information cannot be reconciled with the law of these other circuits. Op. 13.

Even the one circuit on which the panel relied—the D.C. Circuit—has held that the denial of information required by statute satisfies Article III. There—as in every other circuit to confront the question before the panel's decision—a plaintiff establishes a concrete informational injury by showing that (1) he has been deprived of information that was statutorily required to be disclosed and (2) he "suffers, by being denied access to that information, the type of harm Congress sought to prevent." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (holding that the plaintiff lacked standing because it lacked a statutory entitlement to the information—*not* because of the type of harm it asserted). In stark contrast with the panel opinion, the D.C. Circuit correctly interpreted *Spokeo:* "[T]he existence and scope of an injury for informational standing purposes is defined by Congress: a plaintiff seeking to demonstrate that it has informational standing generally 'need not allege any *additional* harm beyond the one Congress has identified.'" *Jewell*, 828 F.3d at 992 (citing *Spokeo*); *see also Waterkeeper Alliance v. EPA*, 853 F.3d 527, 533 (D.C. Cir. 2017) (holding that an organization suffered informational injury when agency action prevented it from obtaining information that was to be "disclosed pursuant to a statute").

Similarly, other circuits, in the wake of *Spokeo*, have continued to recognize that a plaintiff's "injury-in-fact" may consist of the "the denial of access to [information] that he has a right to seek. A plaintiff suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure." *Carlson v. U.S*, 837 F.3d 753, 758 (7th Cir. 2016) (citing *Public Citizen* and *Akins*). Similarly, the Ninth Circuit recently held that the violation of a FCRA disclosure requirement with respect to a consumer "creates a right to information" that gives rise to Article III standing. *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017) (holding that a job applicant suffered a concrete injury when an employer, failing to disclose under the FCRA that it might procure his credit report, was denied what Congress intended to be a meaningful "authorization requirement"). The court held that the deprivation of information alone created a concrete injury and did not inquire whether the plaintiff was adversely affected by this violation in some other way. *Id.* at 499-500. Decisions by other circuits have taken a similar approach. *See also Church v. Accretive Health*, 654 Fed. Appx. 990, 992-96 (11th Cir. 2016) (holding that the plaintiff "sustained a concrete—*i.e.* 'real'—injury because she did not receive the allegedly required disclosures" under the Fair Debt Collection Practices Act and rejecting the argument that, under *Spokeo*, the injury was "not sufficient[ly] concrete…because [she] incurred no actual damages"); *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 273-74 (3d Cir. 2016)

11

(explaining that an "unlawful denial of access to information subject to disclosure" is sufficient for standing).

The panel's decision contradicts even this Court's own precedent on informational injury—both before and after *Spokeo*—and will inevitably cause confusion for district courts in this circuit. *See Doe v. Pub. Citizen*, 749 F.3d 246, 263 (4th Cir. 2014) (observing that "[t]he Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute"); *Salt Inst. v. Leavitt*, 440 F.3d 156, 159 (4th Cir. 2006) (recognizing that an "informational injury" is "sufficiently concrete and specific to satisfy Article III"). The decision also contradicts every district court to have decided the issue in this circuit since *Spokeo*. *See, e.g., Witt v. Corelogic Saferent*, 2016 WL 4424955, at *8 (E.D. Va. 2016) (plaintiff "suffered a concrete informational injury: that is, Witt has alleged that she was deprived of a disclosure to which she was statutorily entitled"); *Thomas v. FTS USA, LLC*, 193 F.Supp.3d 623, 637 (E.D. Va. 2016) (citing *Spokeo* to show that a plaintiff "need not allege any *additional* harm beyond the one Congress has identified" so FCRA disclosure violations are sufficient for the injury-in-fact requirement).

This divergence leaves district courts in the Fourth Circuit with the impossible task of deciding whether to adhere to Supreme Court precedent or this panel's decision. Indeed, just four days after the panel's decision, one district court

judge in Virginia observed that the panel's opinion in this case is "inconsistent with *Spokeo*" and caused an untenable situation: the court "is obligated to follow what the Supreme Court says, not what the Fourth Circuit says that's different than that." Hearing Tr. at 4, *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12cv97 (E.D. Va. May 15, 2017).

## III. The panel's decision fails even on its own terms—by overlooking the real-world value of the information at issue—and should, at a minimum, be modified.

Dreher not only suffered the type of informational injury recognized by the Supreme Court in *Spokeo*, but his case illustrates the real-world value of the information. In enacting the FCRA, Congress viewed it as intrinsically valuable that consumers know what is in their credit reports and where that information came from—a view most obviously supported by the fact that the FCRA requires a free annual disclosure. Transparency, in other words, is a value in its own right under the congressional scheme—not just a means to an end. But Congress also identified the risk of significant harms associated with "the dissemination of false information" (or lack thereof) and "plainly sought to curb" those harms "by adopting procedures designed to decrease that risk." *Spokeo*, 136 S.Ct. at 1550. And section 1681g(a)(2) reflects Congress's judgment that requiring transparency is often the best—and most effective—way to prevent dissemination of inaccurate information.

13

Here, rather than facilitating an effective dispute process, Experian severely limited the ability of Dreher and others like him to confront and communicate with the entity controlling the information in his report. Indeed, at first, Dreher did not even know *who to sue* for violating the obligations that the FCRA imposes on furnishers like CardWorks—because CardWorks intentionally hid its identity and role from consumers. The time, expense, and aggravation that Dreher experienced—requiring him to actually bring a lawsuit and take discovery to learn Cardworks' identity—is anything but speculative or abstract.

Just as importantly, CardWorks had no incentive to incur the costs of conducting a "detailed inquiry or systematic examination" of Dreher's dispute because, at the end of the day, any negative complaints would be attributed to Advanta. *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004). By withholding CardWorks as a source, Experian removed one of Congress's intended mechanisms for policing industry conduct (transparency) and facilitated CardWorks' ability to conduct a "superficial, *un*reasonable" investigation. *Id.* at 431. As the Court made clear in *Spokeo*, "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," its "judgment" is both "instructive and important." 136 S. Ct. at 1549. This Court should respect Congress's considered judgment in enacting the FCRA and conclude that Dreher and the class members have standing.

14

The panel's opinion should therefore be modified to reflect recognition of Dreher's real-world injury. At a minimum, this Court should modify the opinion to eliminate its two-part test, which "requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." Op. 13. Because that test is satisfied only where some other basis for Article III standing already exists, it robs the informational-injury doctrine of any meaning. That cannot stand.

## IV. The panel's decision will threaten enforcement of disclosure requirements enacted by Congress in a range of contexts—from FOIA to consumer and environmental protection.

Finally, this Court should grant rehearing en banc because the panel's decision will have sweeping practical implications across a broad range of contexts. Given its constitutional footing, the decision's impact will not be limited to a specific provision, or to the Fair Credit Reporting Act, or even to federal consumer law. The United States Code is replete with statutory entitlements to information through notice and disclosure requirements—from the Freedom of Information Act to the Fair Housing Act, from the Electronic Communications Privacy Act to the Clean Water Act. *See generally* Cass R. Sunstein, *Informational Regulation and Informational Standing: Akins and Beyond*, 147 U. Pa. L. R. 613, 613 (1999). If the panel's novel two-part test is law, many statutorily-provided informational rights will go unenforced.

15

Imagine, for example, a simple FOIA case. The plaintiff makes a records request, which is improperly denied. At this point, the plaintiff cannot prove that the information she would have received will be consequential, yet she has still been deprived her statutory right. The Supreme Court's "decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Pub. Citizen*, 491 U.S. at 449. And, the Court has made clear, "there is no reason for a different rule" when it comes to Article III standing premised on informational injury. *Id.* But, under the panel's approach, the FOIA plaintiff *would* "need [to] show more" or be tossed out of court. *Id.*

The panel's decision will also make things harder for civil-rights plaintiffs. Receiving false information in violation of the Fair Housing Act, for example, was held sufficient for concrete injury in *Havens* but cannot satisfy the panel's two-part test. *See Havens,* 455 U.S. at 374 (finding tester has Article III standing even if he "approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home").

The implications of the panel's decision cannot be understated. It will make many statutory schemes unworkable in the Fourth Circuit, contrary to Congress's judgment that people should be able to vindicate certain informational rights. Rehearing is necessary to bring this Court into conformity with precedent and

16

ensure that the Fourth Circuit does not stand alone in shutting the courthouse doors.

## CONCLUSION

This Court should grant rehearing en banc.

Respectfully submitted,

 */s/ Deepak Gupta*
Deepak Gupta
Jonathan E. Taylor
Richard J. Rubin
Gupta Wessler PLLC
1735 20th Street, NW
Washington, DC 20036
(202) 888-1741
*deepak@guptawessler.com*

May 25, 2017                          *Counsel for Plaintiff-Appellee*

17

## CERTIFICATE OF COMPLIANCE

This petition contains 3,858 words and complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Baskerville font.

*/s/ Deepak Gupta*
Deepak Gupta
*Counsel for Plaintiff-Appellee*

May 25, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2017, I electronically filed the foregoing petition with the Clerk of the Court for the U.S. Court of Appeals for the Fourth Circuit by using the CM/ECF system. All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta