No. 15-2119

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT
————————————————

MICHAEL T. DREHER,
on behalf of himself and all others similarly situated,

*Plaintiff-Appellee*,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

*Defendant-Appellant*.

————————————————

On Appeal from the United States District Court
for the Eastern District of Virginia

————————————————————————————————

**BRIEF OF *AMICI CURIAE* NATIONAL CONSUMER LAW CENTER
AND NATIONAL ASSOCIATION OF CONSUMER ADVOCATES IN
SUPPORT OF PLAINTIFF-APPELLEE'S PETITION FOR REHEARING**

————————————————————————————————

Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Road, Suite 230
P.O. Box 6268
Annapolis, MD 21403
Tel.: 410.280.6133
Fax: 410.280.8650
peter@hollandlawfirm.com

E. Michelle Drake
John G. Albanese
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
emdrake@bm.net
jalbanese@bm.net

*Counsel for Amici Curiae National Consumer Law Center & National Association
of Consumer Advocates*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. ii

INTEREST OF *AMICI CURIAE* ......................................................1

STATEMENT OF COMPLIANCE WITH RULE 29................................2

INTRODUCTION AND SUMMARY OF ARGUMENT .......................2

ARGUMENT ...................................................................................3

    I.    The Panel's Decision Undermines Important FCRA and Other Consumer Protections Provided by Congress...........................................3

    II.   The Panel's Decision Conflicts with the Supreme Court's Decisions in *Havens* and *Spokeo* .................................................................7

CONCLUSION ...............................................................................12

# TABLE OF AUTHORITIES

**Cases:**

*Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. 16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016) ...................................................................12

*Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016)....................11

*Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998)...................................................9

*Haddad v. Midland Funding, LLC*, No. 16C3942, 2017 WL 1550187 (N.D. Ill. May 1, 2017) ...............................................................................................11

*Havens Realty Corp. v. Coleman,* 455 U.S. 363 (1982)...................................*passim*

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017) ...............................................................................................11

*Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057 (9th Cir. 2002) ..............4

*Perry v. Cable News Network, Inc.*, ___ F.3d ___, 2017 WL 1505064 (11th Cir. Apr. 27, 2017)...............................................................................................11

*Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440 (1989)......................................9

*Ross v. F.D.I.C.*, 625 F.3d 808 (4th Cir. 2010)..........................................................3

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016) ...............................................*passim*

*Witt v. Corelogic Saferent, LLC*, No. 15-cv-386, 2016 WL 4424955 (E.D. Va. Aug. 18, 2016) ..............................................................................................11

**Statutes:**

Title 12, United States Code:
    Section 2605 ....................................................................................................6

ii

Title 15, United States Code:
    Section 1601, *et seq.* ......................................................................6
    Section 1681, *et seq.* ...............................................................*passim*
    Section 1692g(a)(2) ........................................................................6

**Rules:**

Federal Rules of Appellate Procedure:
    Rule 29 ..........................................................................................2

**Legislative History:**

115 Cong. Rec. 2410, 2412 (Jan. 31, 1969)..............................................4

**Other Authorities:**

CFPB, Supervisory Highlights Consumer Reporting Special Edition at 12, 17
(March 2017), available at
https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201703_cfpb_S
upervisory-Highlights-Consumer-Reporting-Special-Edition.pdf ...........................5

FTC, Report to Congress Under Section 319 of the Fair and Accurate Transactions
Act of 2003 at 25 (Dec. 2012), available at
https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-
accurate-credit-transactions-act-2003-fifth-interim-federal-trade-
commission/130211factareport.pdf ..........................................................5

## INTEREST OF AMICI CURIAE

The National Consumer Law Center, Inc. ("NCLC") is a non-profit corporation specializing in consumer law, with historical emphasis on consumer credit. NCLC is recognized nationally as an expert in consumer credit issues, including the Fair Credit Reporting Act ("FCRA"), and has drawn on this expertise to provide information, legal research, policy analyses, and market insights to federal and state legislatures, administrative agencies, and the courts for over 40 years. NCLC is the author of the Consumer Credit and Sales Legal Practice Series, consisting of twenty practice treatises and annual supplements. One volume, Fair Credit Reporting Act (8th ed. 2013), is a standard resource on the FCRA. In addition, NCLC has testified before Congress regarding the FCRA, regularly submits comments to regulators in FCRA rulemakings, and has issued special reports on consumer reporting issues.

The National Association of Consumer Advocates ("NACA") is a non-profit association of attorneys and consumer advocates committed to representing consumers' interests. NACA's members are private and public sector attorneys, legal services attorneys, law professors and law students whose primary focus is the protection and representation of consumers. NACA also has a charitable and educational fund incorporated under § 501(c)(3).

NACA's mission is to promote justice for all consumers by maintaining a forum for communication, networking, and information sharing among consumer advocates across the country, particularly regarding legal issues, and by serving as a voice for its members and consumers in the ongoing struggle to curb unfair or abusive business practices that affect consumers.

## STATEMENT OF COMPLIANCE WITH RULE 29

This brief is submitted pursuant to Rules 29(a) and 29(c) of the Federal Rules of Appellate Procedure. No party or party's counsel authored this brief in whole or in part; no party or party's counsel contributed money to fund the preparation or submission of this brief; and no other person except *amici curiae*, its members, or its counsel contributed money intended to fund the preparation or submission of this brief.

## INTRODUCTION AND SUMMARY OF ARGUMENT

By requiring a consumer who was denied truthful information to show an additional consequential injury resulting from that deprivation, the panel's decision undermines consumer protection laws carefully crafted by Congress, and shutters the courthouse doors to aggrieved consumers. The FCRA required that Experian "clearly and accurately disclose . . . the sources of information" in Dreher's file. 15 U.S.C. § 1681g(a). The panel assumed that Experian had violated the FCRA by depriving Dreher of truthful information regarding the sources of information in

his credit disclosure. The panel, however, found that Dreher lacked Article III standing. The panel imposed a consequential harm requirement on Dreher, holding that in cases involving the deprivation of information mandated by Congress, the plaintiff must show an additional harm that resulted from the denial of the information. The panel required that a plaintiff demonstrate that the "denial of [information to which the plaintiff was legally entitled] creates a 'real' harm with an adverse effect." Panel Op. at 13.

The panel's decision establishes a standard of Article III injury for informational injury cases that is directly contrary to the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) and misapplies the Court's decision *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). The decision undermines important disclosure provisions in the FCRA and other consumer protection statutes.

## ARGUMENT

### I. The Panel's Decision Undermines Important FCRA and Other Consumer Protections Provided by Congress.

The FCRA was "drawn with extreme care, reflecting the tug of the competing interests, and courts must respect the balance struck by Congress when interpreting its provisions." *Ross v. F.D.I.C.*, 625 F.3d 808, 812 (4th Cir. 2010) (quoting *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002)). Prior to the FCRA's enactment, consumer reporting agencies ("CRAs") hid

3

their identities, the information in their files, and most relevant to this case, the

identities of their sources. As stated by Senator Proxmire, the "father" of the

FCRA:

> Many credit reporting agencies refuse to show consumers their files
> possibly out of fear of litigation and *partly to protect its information
> sources*. [One CRA] will neither confirm nor deny that it made a
> report on an individual on the grounds that if it did so, its information
> would dry up, litigation would increase, and its reporting activities
> would be slowed down. This argument is but another example of the
> needs of business taking precedence over consumer rights.

115 Cong. Rec. 2410, 2412 (Jan. 31, 1969) (statement of Sen. Proxmire) (emphasis

added).

In response to that concern, Congress required that "[e]very consumer

reporting agency shall, upon request . . . clearly and accurately disclose to the

consumer . . . the sources of information" in the consumer's file." 15 U.S.C. §

1681g(a). A consumer's right to know the content of his or her credit file is so

important that Congress required CRAs to provide all consumers with a free

annual credit disclosure. 15 U.S.C. § 1681j.

These disclosure provisions are part of the Congressional scheme to ensure

transparency in an industry that was historically shrouded in secrecy and rife with

errors.[1] The specific disclosure provision at issue here, §1681g, requiring

---

[1] Although the FCRA has been in place for nearly 50 years, widespread, inaccurate
credit reporting remains a problem. In 2012, a Federal Trade Commission ("FTC")
study found that 20% of consumers had a verified error in their credit reports. FTC,

disclosure of sources, was designed in significant part to ensure that consumers know the origin of these errors and so that they could hold these information furnishers liable. Furnishers often are responsible for credit reporting errors. A recent CFPB report found that furnishers maintain weak compliance management systems and commit "numerous violations of the FCRA," including providing information to CRAs "while knowing or having reasonable cause to believe that the information was inaccurate because the information furnished did not accurately reflect the information in the furnisher(s)' systems."[2]

Because of the widespread and persistent errors in credit reporting, Congress provided consumers with a right to sue a furnisher if it does not reasonably investigate a dispute. 15 U.S.C. § 1681s-2(b). If the identity of a furnisher is obscured, consumers are hamstrung in their ability to assert their rights. This concern is especially acute in cases involving identity theft, where the consumer most likely has no prior relationship with the furnisher and is therefore completely dependent on information received from the CRA to identify the source.

---

Report to Congress Under Section 319 of the Fair and Accurate Transactions Act of 2003 at 25 (Dec. 2012), available at https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accurate-credit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] CFPB, Supervisory Highlights Consumer Reporting Special Edition at 12, 17 (March 2017), available at https://s3.amazonaws.com/files.consumerfinance.gov/f/documents/201703_cfpb_Supervisory-Highlights-Consumer-Reporting-Special-Edition.pdf.

Even where information is accurate, the decision here undermines critical protections mandated by Congress. The panel's decision jeopardizes a consumer's right to know the sources of information in a credit report by essentially making it unenforceable unless the consumer can show an additional, consequential harm. This concept threatens many other informational rights provided by Congress. For example, a consumer has the right to know which companies have obtained her credit report,[3] when servicing of her mortgage has been transferred to a new company,[4] the identity of the original creditors when debt collectors are attempting to collect debts,[5] and the terms and interest rates of credit transactions.[6] These informational rights allow consumers to understand, track, and organize their financial lives in an increasingly complex world where loans and debts are sold and resold among many different companies, where agreements can be formed online in an instant, and where credit information can be transmitted in the blink of an eye.

Absent Congress's requirements, all of these transactions could occur without critical information being provided to the consumer. Through the disclosure provisions of these and other consumer protection statutes, Congress exercised its judgment and determined that consumers were entitled to the

---

[3] 15 U.S.C. § 1681g(a)(3)(A).
[4] Real Estate Settlement Procedures Act, 12 U.S.C. § 2605.
[5] Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a)(2).
[6] Truth in Lending Act, 15 U.S.C. § 1601, *et. seq*.

provision of truthful information about transactions and documents concerning them. The panel's opinion eviscerates all of these important informational rights, disregarding Congress's judgment that certain information is intrinsically valuable in favor of a consequential analysis requiring individual consumers to show not only that they asked for truthful information and were denied, but also that not having the truthful information caused them some additional consequential harm.

## II. The Panel's Decision Conflicts with the Supreme Court's Decisions in *Havens* and *Spokeo*.

The panel's decision finding that Dreher lacks standing is directly contrary to the Supreme Court's decision in *Havens Realty Corp.*, 455 U.S. 366. There, the Supreme Court held that a housing discrimination "tester" had standing based on a violation of his "statutorily created right to truthful housing information" under the Fair Housing Act. *Id.* at 374. Although the tester had no "intention of buying or renting a home" and "fully expect[ed] that he would receive false information," *id.* at 373–374, the Court held that "[a] tester who has been the object of a misrepresentation made unlawful under [the statute] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing." *Id.* at 373.

Here, to further its goal to make credit reporting "fair and equitable" to consumers, Congress required that CRAs disclose "clearly and accurately" the sources of information in credit disclosures. Dreher alleged, and the panel assumed

7

arguendo, that Experian had not "clearly and accurately" disclosed the sources of information. Panel Op. at 13. In other words, Experian denied Dreher his "statutorily created right to truthful" credit information. Under *Havens*, Experian's violation of Dreher's right to truthful information is sufficient for standing, and there is no basis for the Court's imposition of a further requirement of an additional "'real' harm with an adverse effect." *Id.* at 13.

*Havens* was cited with approval in Justice Thomas' concurrence in *Spokeo* for the proposition that "[a] plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." 136 S. Ct. at 1553 (Thomas J., concurring). Here, however, instead of following or even discussing *Havens*, the Court found that Dreher had not alleged a sufficient "informational injury" because Dreher "was still able to receive a fair and accurate credit report," was not "adversely affected by the alleged error on his credit report," and therefore had not suffered the "harm Congress sought to prevent in enacting the FCRA." Panel Op. at 15, 17. Yet one of the very harms that Congress addressed in the FCRA was the inability of consumers to obtain information in their credit files, including the identity of information sources.

The panel's holding that informational injury requires more than the denial of information itself is flawed. In *Spokeo*, while citing cases discussing informational injury, such as *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440

8

(1989) and *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), the Supreme Court stated "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact" and "a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549–50. The panel's decision is contrary to this aspect of *Spokeo*.

When it comes to informational injury, requiring a showing of additional harm can often be an insurmountable barrier. Often, it is impossible for the consumer to know how information would have changed the consumer's behavior because the consumer may still not yet have received the information that is the subject of the lawsuit. Moreover, the panel's decision undermines the carefully considered judgment of Congress that certain information is intrinsically valuable. CRAs produce reports on consumers that can have life-changing consequences, often at times when consumers are under time pressure or financial duress, such as when they are applying for a mortgage or loan to purchase a desperately needed vehicle. For that reason, Congress requires CRAs to provide free annual disclosures, thereby providing consumers with information about what CRAs have and will say about their credit standing. While this knowledge may enable a consumer to correct an error, or to make a different decision in terms of credit-seeking behavior, the free annual disclosure also serves the important purpose of allowing a consumer to easily evaluate the consumer's own credit standing and to

9

know what has and will be reported to third parties. This knowledge, without more, has intrinsic value. Consumers should not be required to demonstrate an inaccuracy or some consequential harm that flows from being denied truthful information that Congress deemed it important for them to receive.

The Court's reasoning misses the point of statutes requiring mandatory disclosures—there is certain information that Congress has decided is simply important for people to know, regardless of whether that knowledge will cause a difference in an individual's behavior. Knowing the terms of your mortgage loan (a right provided by the Truth in Lending Act), the identity of your mortgage servicer (a right provided by the Real Estate Settlement Procedures Act), and the contents of to your medical records (a right provided by the Health Insurance Portability and Accountability Act), are all intrinsically valuable rights. The panel's decision undermines each and every one of these rights, and many more disclosure rights, by requiring consumers deprived of this type of information to provide additional consequential harm in order to access the courthouse doors.

The panel stated that the use of the Advanta name "may actually *assist* an alleged identity theft victim like Dreher." Panel Op. at 17. That consideration has no bearing on whether Dreher was denied information to which he was entitled and has standing to pursue a claim in federal court. It is not the province of the courts to rewrite the FCRA to include an exception to the FCRA's truthful disclosure

10

requirements for circumstances in which false information might be more useful. The effect of Experian's choices may be relevant to determining whether Experian's violation of the statute was *willful* under 15 U.S.C. § 1681n, the practical effect of which might render a CRA immune from liability for statutory damages, but should have no bearing on the threshold issue of constitutional standing.

Post-*Spokeo*, both circuit and district courts have relied on *Havens* and *Spokeo* in informational injury cases to find that the violation of a procedural right provided by a statute is sufficient, without more, to confer standing. This Court's decision is a sharp departure from those holdings. *See*, *e.g.*, *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 635 (3d Cir. 2017); *Perry v. Cable News Network, Inc.*, ___ F.3d ___, 2017 WL 1505064, at *2 (11th Cir. Apr. 27, 2017); *Haddad v. Midland Funding, LLC*, 2017 WL 1550187, at *3–4 (N.D. Ill. May 1, 2017); *Witt v. Corelogic Saferent, LLC*, 2016 WL 4424955, at *8 (E.D. Va. Aug. 18, 2016); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, 2016 WL 6803775, at *7 (D. Md. Nov. 17, 2016). The panel's decision, which is contrary to this authority, warrants rehearing.

11

## CONCLUSION

The panel's decision undermines and threatens important consumer rights provided by Congress, and the opinion presents critical and hotly contested issues of federal jurisdiction. This case should be reheard by the panel or the *en banc* court.

Respectfully submitted,

Date: June 1, 2017

/s/Peter A. Holland
Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Road, Suite 230
P.O. Box 6268
Annapolis, MD 21403
Tel.: 410.280.6133
Fax: 410.280.8650
peter@hollandlawfirm.com

E. Michelle Drake
John G. Albanese
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
emdrake@bm.net
jalbanese@bm.net

*Counsel for Amici Curiae National Consumer Law Center & National Association of Consumer Advocates*

## CERTIFICATE OF COMPLIANCE

This Amici Curiae Brief complies with the type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 2,579 words.

This Amici Curiae Brief complies with the typeface and type style requirements because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 pt. Times New Roman.

Date: June 1, 2017              /s/Peter A. Holland
                               Peter A. Holland
                               THE HOLLAND LAW FIRM, P.C.
                               914 Bay Ridge Road, Suite 230
                               P.O. Box 6268
                               Annapolis, MD 21403
                               Tel.: 410.280.6133
                               Fax: 410.280.8650
                               peter@hollandlawfirm.com

                               E. Michelle Drake
                               John G. Albanese
                               BERGER & MONTAGUE, P.C.
                               43 SE Main Street, Suite 505
                               Minneapolis, MN 55414
                               Tel.: 612.594.5999
                               Fax: 612.584.4470
                               emdrake@bm.net
                               jalbanese@bm.net

                               *Counsel for Amici Curiae National
                               Consumer Law Center & National
                               Association of Consumer Advocates*

13

## CERTIFICATE OF SERVICE

I certify that on June 1, 2017, the foregoing Amici Curiae Brief was filed electronically through the Court's CM/ECF system. Notice of this filing will be sent electronically to all parties by operation of the Court's electronic filing system.

Date: June 1, 2017

/s/Peter A. Holland
Peter A. Holland
THE HOLLAND LAW FIRM, P.C.
914 Bay Ridge Road, Suite 230
P.O. Box 6268
Annapolis, MD 21403
Tel.: 410.280.6133
Fax: 410.280.8650
peter@hollandlawfirm.com

E. Michelle Drake
John G. Albanese
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Tel.: 612.594.5999
Fax: 612.584.4470
emdrake@bm.net
jalbanese@bm.net

*Counsel for Amici Curiae National Consumer Law Center & National Association of Consumer Advocates*

14

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2119 _____    Caption: Dreher v. Experian Information Solutions, Inc. _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

National Association of Consumer Advocates _____
(name of party/amicus)

_____

who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐ NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Peter Holland _____        Date: _____ June 1, 2017 _____

Counsel for: NACA _____

### CERTIFICATE OF SERVICE
****************************

I certify that on _____ June 1, 2017 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Peter Holland _____        _____ June 1, 2017 _____
       (signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-2119        Caption: Dreher v. Experian Information Solutions, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

National Consumer Law Center ("NCLC")
(name of party/amicus)

_____

who is _____ amicus _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                    ☐ YES ☑ NO
       If yes, identify all parent corporations, including all generations of parent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?                                             ☐ YES ☑ NO
       If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☐ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                          ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Peter Holland                    Date:    June 1, 2017

Counsel for: NCLC

## CERTIFICATE OF SERVICE
***************************

I certify that on     June 1, 2017     the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

/s/ Peter Holland                               June 1, 2017
    (signature)                                    (date)

- 2 -