No. 15-2119

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

MICHAEL T. DREHER,
on behalf of himself and all others similarly situated,
*Plaintiff-Appellee*,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.
*Defendant-Appellant*.

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia

———————————

**BRIEF OF AMICI CURIAE CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON AND PROFESSOR MARGARET B. KWOKA IN SUPPORT OF APPELLEE'S PETITION FOR REHEARING EN BANC**

———————————

Jeffrey Kaliel
Andrew Silver
TYCKO & ZAVAREEI LLP
1828 L Street, N.W.,
Suite 1000
Washington, D.C. 20036
(202) 973-0900

*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2119__      Caption: __Dreher v. Experian Information Solutions, Inc.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Citizens for Responsibility and Ethics in Washington ("CREW")__
(name of party/amicus)

who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2. Does party/amicus have any parent corporations?  ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO
   If yes, identify all such owners:

09/29/2016 SCC                           - i -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Jeffrey Kaliel     Date: June 1, 2017

Counsel for: CREW

## CERTIFICATE OF SERVICE
**************************

I certify that on   June 1, 2017   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Jeffrey Kaliel             June 1, 2017
(signature)                    (date)

- ii -

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES .............................................................................. iv

   I.   INTRODUCTION ..........................................................................................1

   II.  ARGUMENT..................................................................................................3

        A.  The Court's Order Wrongly Heightened The Informational Injury Standard................................................................................................3

        B.  Both Before And After Spokeo, Courts Have Routinely Allowed Informational Injury Claims Under FOIA And Other Laws To Proceed Absent A Showing Of Particularized Harm................................8

# **TABLE OF AUTHORITIES**

**Cases**

*Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*,
  No. PX-16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016) ...........................10

*Am. Farm Bureau Fed'n v. EPA*,
  836 F.3d 963 (8th Cir. 2016) ................................................................................9

*Brandon v. Eckard*,
  569 F.2d 683 (D.C. Cir. 1977) ............................................................................10

*Carlson v. United States*,
  837 F.3d 753 (7th Cir. 2016) ................................................................................8

*City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*,
  982 F.2d 1086 (7th Cir. 1992) ............................................................................11

*Clark v. Trans Union, LLC*,
  No. 3:15cv391, 2016 WL 7197391 (E.D. Va. Dec. 9, 2016) ..............................10

*De la Torre v. CashCall, Inc.*,
  No. 08-CV-03174-MEJ, 2016 WL 6892693 (N.D. Cal. Nov. 23, 2016) ...............5

*Dep't of Air Force v. Rose*,
  425 U.S. 352 (1976) ..............................................................................................6

*Doe v. Public Citizen*,
  749 F.3d 246 (4th Cir. 2014) ................................................................................5

*DOJ v. Julian*,
  486 U.S. 1 (1988) ..................................................................................................6

*DOJ v. Reporters Comm. for Freedom of Press*,
  489 U.S. 749 (1989) ..............................................................................................6

*FBI v. Abramson*,
  456 U.S. 615 (1982) ..............................................................................................6

*FEC v. Akins*,
  524 U.S. 11 (1998) ................................................................................. 3, 7, 8, 10

*Friends of Animals v. Jewell*,
  828 F.3d 989 (D.C. Cir. 2016) ..............................................................................5

*Haddad v. Midland Funding, LLC*,
  No. 16 C 3942, 2017 WL 1550187 (N.D. Ill. May 1, 2017) .................................5

*Havens Realty Corp. v. Coleman*,
  455 U.S. 363 (1982) .................................................................................. 3, 4, 6, 11

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) ................................................................................... 6

*Lane v. Bayview Loan Servicing*,
  No. 15 C 10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016) ............................. 10

*Larson v. Trans Union, LLC*,
  201 F. Supp. 3d 1103 (N.D. Cal. 2016) ............................................................... 10

*Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*,
  No. 14-CV-01915 (APM), 2016 WL 4435175 (D.D.C. Aug. 19, 2016) ............. 10

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ............................................................................................... 2

*Prindle v. Carrington Mortgage Servs., LLC*,
  No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016) ...... 10

*Public Citizen v. DOJ*,
  491 U.S. 440 (1989) ....................................................................................... 3, 6, 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016) ................................................................................. passim

*Tandy v. City of Wichita*,
  380 F.3d 1277 (10th Cir. 2004) ............................................................................ 11

*Thomas v. FTS USA, LLC*,
  No. 3:13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016) .......................... 10

*U.S. v. Weber Aircraft Corp.*,
  465 U.S. 792 (1984) ............................................................................................... 6

*Zink v. First Niagara Bank, N.A.*,
  206 F. Supp. 3d 810 (W.D.N.Y. 2016) ................................................................... 5

## I.  INTRODUCTION

In the Court's order vacating the district court's opinion on jurisdictional grounds, it created a new, heightened standard for informational injury that would severely damage plaintiffs' ability to seek redress across statutes guaranteeing access to information. This presents far-reaching threats to protections of public access to information provided by Congress in the Freedom of Information Act ("FOIA"). *Amici* Citizens for Responsibility and Ethics in Washington ("CREW) and Professor Margaret B. Kwoka[1] submit this brief in support of the Petition for Rehearing *En Banc*, submitted by Plaintiff-Appellee Michael Dreher.

CREW is a non-profit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code. Through a combined approach of research, advocacy, public education, and litigation, CREW seeks to protect the rights of citizens to be informed about the activities of government officials and to ensure the integrity of those officials. Many of CREW's actions flow from the principles that transparency is a cornerstone of our democracy and government accountability is achieved through government transparency. In support of its mission, CREW frequently files Freedom of Information Act ("FOIA") requests to

---

[1] *Amici* state that no party or party's counsel authored this brief in whole or in part, that no party or party's counsel contributed money that was intended to fund preparing or submitting the brief, and that no other person besides *amici* or their counsel contributed money that was intended to fund preparing or submitting the brief.

1

access and make publicly available government documents that reflect on, or relate to, the integrity of government officials and their actions. CREW participates as an *amicus* in this case to ensure the continued availability of the FOIA to promote our democracy's interest in open and robust debate and "an informed citizenry." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Margaret Kwoka is an Associate Professor at the University of Denver Sturm College of Law whose research centers on government transparency and access to information. Many of her articles focus on administration of and litigation under the Freedom of Information Act, including articles that appear in the Duke Law Journal, Yale Law Journal Forum, Boston University Law Review, and U.C. Davis Law Review, among others. She is also a member of the FOIA Advisory Committee at the National Archives and Records Administration, has testified before the U.S. Senate Committee on the Judiciary in its FOIA oversight hearings, and has litigated numerous FOIA cases on behalf of non-profits. Professor Kwoka joins this amicus brief because she is concerned that the panel opinion's misunderstanding of the doctrine of informational injury, if allowed to stand, will substantially impair government-transparency litigation.

## II. ARGUMENT

### A. The Court's Order Wrongly Heightened The Informational Injury Standard

The Court's order dismissing the case for lack of jurisdiction based its analysis on *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). But no post-*Spokeo* decision has interpreted informational injury so narrowly, and under the panel's reasoning, rights to information provided under statutes other than the FCRA—including FOIA—could be crippled. To heighten informational injury requirements is at odds with *Spokeo* along with trial and appellate decisional law both before and after *Spokeo*, and would threaten rights to information previously guaranteed by Congress. Indeed, several post-*Spokeo* decisions that found *sufficient* informational injury would likely come out differently if other courts applied this Court's reasoning, thus significantly harming individuals and undermining federal statutes.

There is no support for the heightened informational injury standard the Court enacted. Indeed, the Court entirely ignored the Supreme Court's decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), and it wrongly distinguished the decisions in *Public Citizen v. DOJ*, 491 U.S. 440 (1989), and *FEC v. Akins*, 524 U.S. 11 (1998), from the facts of this case. Those cases stand for the proposition that deprivation of protected information is itself an injury, and contrary to the Court's holding, *Spokeo* did not heighten informational injury requirements.

3

In *Spokeo*, the Court found that where a plaintiff demonstrates "the violation of a procedural right granted by statute …. a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." 136 S. Ct. at 1549 (emphasis in original). In spite of this, in deciding this case, the Court held that "a statutory violation *alone* does not create a concrete informational injury" and, rather, "a constitutionally cognizable informational injury requires that a person lack access to information to which he is legally entitled *and* that the denial of that information creates a 'real' harm with an adverse effect." Op. at 13 (emphasis in original). But *Spokeo* stands for the very different proposition that no additional harm beyond that identified by Congress need be alleged, so the language following the "and" in the Court's decision wrongly heightened the requirements for informational injury.

Indeed, the Court did not even cite *Havens*, which is the best pre-*Spokeo* authority for informational injury—and remains good law after *Spokeo*. In *Havens*, the Court held that the plaintiff had "tester" standing under the Fair Housing Act and that the plaintiff's "statutorily created right to truthful housing information" was violated, even where the plaintiff/tester had zero intent of actually renting. *Id.* at 373-74. Since the plaintiff was never going to rent an apartment from the defendant, there was no "additional harm" beyond the one Congress identified. Several courts in recent decisions have observed the fact that *Spokeo* did not

4

overrule *Havens* because the majority decision in *Spokeo*—like the decision here—made no reference whatsoever to *Havens*. *See, e.g., Haddad v. Midland Funding, LLC*, No. 16 C 3942, 2017 WL 1550187, at *4 (N.D. Ill. May 1, 2017); *De la Torre v. CashCall, Inc.*, No. 08-CV-03174-MEJ, 2016 WL 6892693, at *9 (N.D. Cal. Nov. 23, 2016); *Zink v. First Niagara Bank, N.A.*, 206 F. Supp. 3d 810, 817 (W.D.N.Y. 2016). And this Court followed *Havens* in allowing for "informational harm" standing as recently as 2014. *See Doe v. Public Citizen*, 749 F.3d 246, 263-64 (4th Cir. 2014).

The D.C. Circuit recently discussed the state of informational injury jurisprudence in light of the *Spokeo* decision. In *Friends of Animals v. Jewell*, it observed that *Spokeo* stands for the proposition that "the existence and scope of an injury for informational standing purposes is defined by Congress." 828 F.3d 989, 992 (D.C. Cir. 2016). The court further explained

> In some instances, a plaintiff suffers the type of harm Congress sought to remedy when it simply seeks and is denied specific agency records. In others, a plaintiff may need to allege that nondisclosure has caused it to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals or organizations like it.

*Id.* And the Third Circuit likewise ruled after *Spokeo* that Congress can establish new injuries-in-fact. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) ("The Supreme Court's recent decision in *Spokeo* …. does not alter our prior analysis").

5

Here, the Court distinguished the post-*Havens* (and pre-*Spokeo*) decisions in *Public Citizen* and *Akins* on the grounds that they are "inapposite because both cases involved the deprivation of information that adversely affected the plaintiffs' conduct." Op. at 16. But the "deprivation of information" in those cases did not "adversely affect" the plaintiffs there any more than they did Dreher here.

In *Public Citizen*, the plaintiff challenged the Justice Department's failure to provide access to information, the disclosure of which was required by the Federal Advisory Committee Act, and the Court found it to "constitute[] a sufficiently distinct injury to provide standing to sue." 491 U.S. at 449.[2] Although the deprivation of statutorily-required information was sufficient injury to establish standing, the Fourth Circuit here focused on the nature of the information at issue, which "would have allowed [plaintiffs] to 'participate more effectively in the judicial selection process.'" (Op. at 16 (quoting *Public Citizen*, 491 U.S. at 449)). But per both *Spokeo* and *Havens*, as explained above, Congress' reason for requiring this information by statute is irrelevant to the standing analysis. Moreover, the panel here easily could have made the same determination with

---

[2] Indeed, the Court referenced five FOIA decisions to proclaim that it had "never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." *Id.* (citing *DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749 (1989); *DOJ v. Julian*, 486 U.S. 1 (1988); *U.S. v. Weber Aircraft Corp.*, 465 U.S. 792 (1984); *FBI v. Abramson*, 456 U.S. 615 (1982); *Dep't of Air Force v. Rose*, 425 U.S. 352 (1976)).

6

respect to information protected by the FCRA: such information would have allowed Plaintiff to better seek redress for incorrect credit reporting that negatively impacted him.

So, too in *Akins*. There, the informational injury at issue was "a group of voters' 'inability to obtain information' that Congress had decided to make public." *Spokeo*, 136 S. Ct. at 1549-50 (citing *Akins*, 524 U.S. at 20-25). And, similar to *Public Citizen*, it was enough that the information guaranteed by Congress was withheld. Yet the Court here suggested that *Akins* hinged on that fact that the information was "directly related to [] the most basic of political rights" (Op. at 17 (quoting *Akins*, 524 U.S. at 24-25)). But again—as per *Spokeo* and *Havens*—the background discussion of the purpose of the statute at issue in *Akins* was not necessary to the standing question.

The Court in this case found that the error on plaintiff's credit report failed to "adversely affect[] his conduct in any way." Op. at 17. Yet Plaintiff made detailed allegations regarding the effect on his credit and security clearance, not to mention the loss of time, caused by the violations alleged in his complaint. Thus, a court could have reached the same conclusions regarding lack of "adverse effect" in those cases, as well. But this kind of line drawing has far-reaching threats to individuals and groups in other "informational injury" contexts, including but not limited to FOIA, other information statutes, and consumer protection statutes such

7

as the FDCPA. It also more broadly threatens Congress's power to define new injuries, which is ironic given that the purpose of Article III is supposed to be to preserve separation of powers.

### B. Both Before And After *Spokeo*, Courts Have Routinely Allowed Informational Injury Claims Under FOIA And Other Laws To Proceed Absent A Showing Of Particularized Harm

Courts have routinely allowed FOIA and other claims involving informational injury to proceed in the absence of a showing of particularized harm. The panel's informational injury analysis in this case is an outlier—and particularly presents a threat to future FOIA claims.

For example, after the *Spokeo* decision was handed down, the Seventh Circuit found standing based on a simple denial of information. *Carlson v. U.S.*, 837 F.3d 753, 758 (7th Cir. 2016). The court found that a journalist had standing to sue for the unsealing of 70-year-old grand jury records. *Id.* at 756-57. As the court explained: "[Plaintiff's] injury-in-fact is the denial of access to government documents that he has a right to seek. A plaintiff suffers an injury-in-fact when she is unable to obtain information that is statutorily subject to public disclosure." *Id.* at 758. (citing *Akins* and *Public Citizen*). Importantly, the court did not find that the plaintiff suffered any type of particularized harm, and, indeed, it explained that "there is no need for [plaintiff] to show that he has any particular connection to the grand jury proceeding." *Id.* at 759. Under the logic of the panel decision in this

8

case, however, a future panel facing FOIA litigation like *Carlson* could conclude that informational injury was inadequately alleged if it deems the journalist not to have suffered some "adverse effect."

A post-*Spokeo* FOIA decision in the Eighth Circuit illustrates this principle. *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963 (8th Cir. 2016). Two farmers' associations brought action under the "reverse disclosure" portion of FOIA, challenging the EPA's release of personal information regarding the farmers. *Id.* at 964. The EPA argued that the plaintiffs lacked standing because the information released was already publicly available on the internet, and thus there could be no protected privacy interest and no injury-in-fact. *Id.* at 968. The Eighth Circuit rejected this argument, reasoning that the allegations stated a "concrete and particularized injury in fact," even if information was already publicly available—and despite the absence of additional consequential harm. *Id.* The court explained that the question of whether the disclosure was an "unwarranted invasion of personal privacy" for the purposes of FOIA was "a separate inquiry into the merits of the claim." *Id.*

In another example, plaintiffs brought a FOIA claim against the Army Board for Correction of Military Records for its failure to publish certain rules and policies. *Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Def.*, No. 14-CV-01915 (APM), 2016 WL 4435175, at *8 (D.D.C. Aug. 19, 2016). The court

9

concluded that the plaintiffs had standing to proceed on the basis of allegations that the plaintiff "did not get what the statute entitled [it] to receive," which was enough to "easily [] establish[] injury in fact." *Id.* (citing *Akins*). Again, there was no suggestion that the plaintiffs had to make a showing of particularized harm in order to proceed under FOIA. But under the Court's reasoning in this case, a plaintiff such as those in *National Veterans* might be found to have failed to establish an "adverse effect," undermining public access to information previously guaranteed by statute.[3]

These cases follow longstanding FOIA jurisprudence. For example, in *Brandon v. Eckard*, the plaintiff sought documents transferred by President Nixon to the General Services Administration during President Nixon's vice presidency. 569 F.2d 683, 684 (D.C. Cir. 1977). In evaluating whether the plaintiff had standing, the court found that "FOIA does not discriminate among persons seeking access to materials on grounds of their particular interests in the requested

---

[3] Additional post-*Spokeo* decisions under other federal statutes, such as the FDCPA—*see, e.g.*, *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016); *Lane v. Bayview Loan Servicing*, No. 15 C 10446, 2016 WL 3671467 (N.D. Ill. July 11, 2016); *Prindle v. Carrington Mortgage Servs., LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424 (M.D. Fla. Aug. 16, 2016) —and FCRA—*see, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15cv391, 2016 WL 7197391 (E.D. Va. Dec. 9, 2016); *Larson v. Trans Union, LLC*, 201 F. Supp. 3d 1103 (N.D. Cal. 2016); *Thomas v. FTS USA, LLC*, No. 3:13-cv-825, 2016 WL 3653878 (E.D. Va. June 30, 2016)—finding sufficient informational injury would likewise have been threatened by the Court's analysis in this case.

10

information." *Id.* at 687-88. Indeed the court stated that FOIA does not require that the requestor "be[] a party" to the documents or "claim ownership in the materials." *Id.* at 688; *see also Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004) (citing *Havens* and allowing "tester" standing for city's "failure to provide [plaintiff] with adequate information concerning its transportation services," under Americans with Disabilities Act); *City of Chicago v. Matchmaker Real Estate Sales Ctr., Inc.*, 982 F.2d 1086, 1095 (7th Cir. 1992) (same for tester standing for parties denied truthful information under Fair Housing Act, "even though they sustained no harm beyond the discrimination itself"). Under the panel's reasoning in this case, however, a FOIA requestor might be compelled to demonstrate some connection to the requested materials, thus subverting Congress's guarantees of public access. Such an outcome is entirely inconsistent with *Spokeo* and decisions that preceded it. Rehearing in this matter is appropriate.

Dated: June 1, 2017                                Respectfully submitted,

/s/ Jeffrey Kaliel
Jeffrey Kaliel
Andrew Silver
TYCKO & ZAVAREEI LLP
1828 L Street, N.W.,
Suite 1000
Washington, D.C. 20036
(202) 973-0900
jkaliel@tzlegal.com
asilver@tzlegal.com

11

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with the typeface and type style requirements because it has been prepared in 14-point Times New Roman, a proportionally spaced typeface.

I further certify that this brief complies with the type-volume limitation because, according to the count of Microsoft Word, it contains 2600 words, excluding the parts of the brief exempted under Rule 32.

/s/ Jeffrey Kaliel  
Jeffrey Kaliel  
TYCKO & ZAVAREEI LLP

## CERTIFICATE OF SERVICE

Undersigned hereby certifies that on this 1st day of June, 2017, the foregoing BRIEF OF AMICI CURIAE CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON AND PROFESSOR MARGARET B. KWOKA was served upon all counsel of record via the Court's CM/ECF system.

/s/ Jeffrey Kaliel  
Jeffrey Kaliel  
TYCKO & ZAVAREEI LLP

13