No. 15-2119

# UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

---

MICHAEL T. DREHER,
on behalf of himself and all others similarly situated,
*Plaintiff-Appellee,*

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia

---

## BRIEF OF NATURAL RESOURCES DEFENSE COUNCIL
## AS AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLEE'S
## PETITION FOR REHEARING EN BANC

---

Michael E. Wall
Natural Resources Defense Council
111 Sutter Street, 21st floor
San Francisco, CA 94104
(415) 875-6100
mwall@nrdc.org
*Counsel for Amicus Curiae*
*Natural Resources Defense Council*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-2119__        Caption: __Dreher v. Experian Information Solutions, Inc._____

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Natural Resources Defense Council, Inc._____
(name of party/amicus)

_____

 who is _____amicus_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.      Does party/amicus have any parent corporations?                         ☐ YES ☑ NO
        If yes, identify all parent corporations, including all generations of parent corporations:

3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                             ☐ YES ☑ NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(a)(2)(B))? ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☐ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Michael E. Wall                          Date: _____ June 1, 2017 _____

Counsel for: Natural Resources Defense Council

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ June 1, 2017 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Michael E. Wall                                      _____ June 1, 2017 _____
           (signature)                                                    (date)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................... ii

INTERESTS OF AMICUS ..................................................................... 1

INTRODUCTION ................................................................................. 3

ARGUMENT ......................................................................................... 4

   I.   Congress enacted disclosure laws in recognition of
       the information's value .............................................................. 4

  II.   Congress may create new rights cognizable under Article III ............. 6

 III.   The denial of information may create an injury even
       absent collateral consequences ................................................ 9

 IV.   A plaintiff may demonstrate injury based on a risk of real harm ...... 13

CONCLUSION ..................................................................................... 15

CERTIFICATE OF COMPLIANCE .................................................... 16

CERTIFICATE OF SERVICE ............................................................. 17

## TABLE OF AUTHORITIES

## CASES

*Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.,*
 No. PX-16-1053, 2016 WL 6803775 (D. Md. Nov. 17, 2016) ................ 13

*Amnesty Int'l, USA v. Battle,*
 559 F.3d. 1170 (11th Cir. 2009) .................................................... 7

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,*
 397 U.S. 150 (1970) ..................................................................... 7

*Baur v. Veneman,*
 352 F.3d 625 (2d Cir. 2003) ........................................................ 14

*BE & K Constr. Co. v. NLRB,*
 536 U.S. 516 (2002) ..................................................................... 2

*Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico,*
 457 U.S. 853 (1982) .................................................................. 4-5

*Cal. Motor Transp. Co. v. Trucking Unlimited,*
 404 U.S. 508 (1972) ..................................................................... 1

*Carey v. Piphus,*
 435 U.S. 247 (1978) .................................................................. 6, 7

*Clark v. Trans Union, LLC,*
 No. 3:15CV391, 2016 WL 7197391 (E.D. Va. Dec. 9, 2016) .................. 13

*Doe v. Pub. Citizen,*
 749 F.3d 246 (4th Cir. 2014) ................................................... 9, 12

*Dreher v. Experian Information Solutions, Inc.*,
    No. 15-2119 (4th Cir. May 11, 2017) ............................................... 3, 10, 13

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*,
    438 U.S. 59 (1978) ....................................................................... 14

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) ....................................................................... 9

*FEC v. Akins*,
    524 U.S. 11 (1998) .............................................................. 3, 9, 10, 11

*First Nat'l Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ....................................................................... 5

*Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*,
    204 F.3d 149 (4th Cir. 2000)............................................................ 13, 14

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000) ....................................................................... 7

*Helphenstine v. Downey*,
    7 App. D.C. 343 (D.C. 1895)........................................................... 6

*Irish Lesbian & Gay Org. v. Giuliani*,
    143 F.3d 638 (2d Cir. 1998)............................................................ 7

*Jacobs v. Clark Cty. Sch. Dist.*,
    526 F.3d 419 (9th Cir. 2008) ........................................................... 7

*Lawrence v. McCalmont*,
    43 U.S. 426 (1844) ....................................................................... 7

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973) ................................................................................ 9

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 8, 9, 11

*Massachusetts v. EPA,*
    549 U.S. 497 (2007) ................................................................................ 8

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010) ......................................................................... 3, 14

*Nat'l Archives & Records Admin. v. Favish,*
    541 U.S. 157 (2004) .............................................................................. 10

*NLRB v. Robbins Tire & Rubber Co.,*
    437 U.S. 214 (1978) ................................................................................ 5

*Pub. Citizen v. U.S. Dep't of Justice,*
    491 U.S. 440 (1989) ............................................... 3, 7-8, 9, 10, 11

*R.R. Ret. Bd. v. Alton R.R. Co.,*
    295 U.S. 330 (1935) ................................................................................ 9

*Sierra Club v. Morton,*
    405 U.S. 727 (1972) ................................................................................ 7

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ......................................... 3, 8, 10, 11, 13

*Summers v. Earth Island Inst.,*
    555 U.S. 488 (2009) .............................................................................. 11

*Thomas v. FTS USA, LLC,*
    193 F. Supp. 3d 623 (E.D. Va. 2016) ...................................................... 8, 13

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n,*
    389 U.S. 217 (1967) ......................................................................................2

*Warth v. Seldin,*
    422 U.S. 490 (1975) ......................................................................................9

## CONSTITUTION, STATUTES, AND REGULATIONS

U.S. Const. amend. I...........................................................................................1

*Freedom of Information Act*

5 U.S.C. § 552 .....................................................................................................1

5 U.S.C. § 552(a) ................................................................................................5

5 U.S.C. § 552(b) ................................................................................................5

*Securities Exchange Act of 1934*

15 U.S.C. § 78m .................................................................................................5

15 U.S.C. § 78o(d) ..............................................................................................5

*Fair Credit Reporting Act*

15 U.S.C. § 1681g(a)...........................................................................................6

*Clean Water Act*

33 U.S.C. § 1318(a) ........................................................................................ 1, 6

33 U.S.C. § 1318(b)........................................................................................ 1, 6

33 U.S.C. § 1365(a)............................................................................................1

*Clean Air Act*

42 U.S.C. § 7651k(a) .................................................................6

42 U.S.C. § 7661b(e) ................................................................6

42 U.S.C. § 7661c(c) ................................................................6

*Emergency Planning and Community Right-to-Know Act*

42 U.S.C. § 11023(a) ............................................................. 1, 6

42 U.S.C. § 11023(h).............................................................. 1, 6

42 U.S.C. § 11046(a)(1)(A)(iv) ................................................ 1

*Regulations of the Securities and Exchange Commission*

17 C.F.R. pt. 240 .................................................................. 6

## OTHER AUTHORITIES

Daniel Bennett et al., *Intrinsic Valuation of Information in Decision Making under Uncertainty*, 12 PLoS Computational Biology e1005020, July 14, 2016, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4944922 ...........4

Daniel Townsend, *Who Should Define Injuries For Article III Standing?*, 68 Stan. L. Rev. Online 76 (2015)................................................................8

*Google's Parent Co. Achieves Big Mkt. Cap Milestone*, Fortune.com (Apr. 24, 2017), http://fortune.com/2017/04/24/alphabet-google-market-cap-valuation/............................................................................4

Restatement (Second) of Torts § 907 cmt. b (1979) ........................... 6

vi

## INTERESTS OF AMICUS

Amicus curiae Natural Resources Defense Council, Inc. (NRDC) is a nonprofit environmental organization with hundreds of thousands of members, and some two million online advocates, throughout the United States. NRDC scientists, lawyers, and other professionals work to protect the rights of all people to clean air, safe water, and healthy communities.[1]

The panel's misapprehension of the "informational injury" doctrine undermines NRDC's and its members' ability to enforce an array of disclosure laws, including the Freedom of Information Act (FOIA), 5 U.S.C. § 552, and statutes that require industrial facilities to report releases of toxic chemicals, *see* 42 U.S.C. § 11023(a), (h); *id*. § 11046(a)(1)(A)(iv), and other pollutants, *see, e.g.*, 33 U.S.C. § 1318(a), (b); *id*. § 1365(a). By restricting citizen access to the courts to compel such disclosures, the panel's decision interferes with NRDC's ability, through litigation, "to petition the Government for a redress of grievances." U.S. Const. amend. I; *see Cal.*

---

[1] No party or party's counsel authored this brief in whole or part. Nor did any person other than amicus curiae contribute money intended to fund the preparation or submission of this brief.

*Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). This right

of access to the courts is central to NRDC's accomplishment of its mission,

and "one of 'the most precious of the liberties safeguarded by the Bill of

Rights,'" *BE & K Constr. Co. v. NLRB*, 536 U.S. 516, 524-25 (2002) (quoting

*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222

(1967)).

## INTRODUCTION

This Court should grant rehearing en banc because the panel's decision confuses Article III standing doctrine in two primary ways:

First, the Supreme Court has repeatedly explained that the unlawful withholding of information may by itself "constitute[] a sufficiently distinct injury to provide standing to sue." *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449 (1989); *see also FEC v. Akins*, 524 U.S. 11, 21 (1998). The panel's contrary conclusion, that informational injury is cognizable only if it "adversely affect[s] the plaintiffs' conduct," slip op. at 16, is inconsistent with these prior cases, and contrary to the Supreme Court's recent interpretation of them in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016).

Second, the panel's holding that an informational injury is not constitutionally cognizable unless it causes some consequential "'real' harm," slip op. at 13, is directly inconsistent with the Supreme Court's longstanding recognition that a "*risk* of real harm" can satisfy Article III. *Spokeo*, 136 S. Ct. at 1549 (emphasis added); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 153-54 (2010) (holding that a "reasonable probability"

3

of harm satisfied Article III). Congress adopts many laws designed to

reduce risks of harm, including disclosure requirements. No court has ever

held that Article III requires people to wait for the harm to accrue before

suing to enforce such safeguards.

**ARGUMENT**

### I.    Congress enacted disclosure laws in recognition of the information's value

While the modern era's commodification of data has created vast

wealth,[2] the value our Nation places on information extends far beyond its

instrumental utility or economic importance. The availability of

information—for its own sake[3]—lies at the heart of the First Amendment

and "its role in affording the public access to discussion, debate, and the

dissemination of information and ideas." *See Bd. of Educ., Island Trees Union*

---

[2] *See, e.g.*, *Google's Parent Co. Achieves Big Mkt. Cap Milestone*, Fortune.com (Apr. 24, 2017), http://fortune.com/2017/04/24/alphabet-google-market-cap-valuation/ (noting Alphabet's $600 billion market value).

[3] Recent cognitive science suggests that humans value information inherently, regardless of specific instrumental utility. *See, e.g.*, Daniel Bennett et al., *Intrinsic Valuation of Information in Decision Making under Uncertainty*, 12 PLoS Computational Biology e1005020, July 14, 2016, *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4944922.

4

*Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 866 (1982) (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 783 (1978)) (recognizing First Amendment protection for library collections); *cf. First Nat'l Bank*, 435 U.S. at 783 (noting that the First Amendment does not allow the government to limit "the stock of information" available to the public). Information also plays an important role in our civil society by allowing individuals to hold government officials and others accountable for their actions. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed.").

Reflecting information's value, Congress has, in its judgment, created statutory rights to certain forms of information. Federal agencies must release many government records to the public under FOIA. 5 U.S.C. § 552(a), (b). Publicly traded corporations must annually disclose a comprehensive overview of their business and financial condition. 15 U.S.C. §§ 78m, 78o(d); 17 C.F.R. pt. 240. Industrial facilities must report

5

discharges and releases of pollutants to air, water, and the environment.
*See, e.g.*, 42 U.S.C. §§ 7651k(a), 7661b(e), 7661c(c); 33 U.S.C. § 1318(a), (b); 42
U.S.C. § 11023(a), (h). And consumer reporting agencies must disclose
certain information to consumers. 15 U.S.C. § 1681g(a).

## II.  Congress may create new rights cognizable under Article III

The principle that Congress may establish a right to information, the
denial of which is Article III injury, comports both with precedent and a
due respect for the separation of powers.

Informational injury is often neither tangible nor readily monetizable,
but that does not make it constitutionally deficient. The common law has
long provided redress to persons deprived of intangible rights, even absent
collateral harm. For example, the common law authorizes nominal
damages for trespass even absent consequential injury. *See* Restatement
(Second) of Torts § 907 cmt. b (1979); *Carey v. Piphus*, 435 U.S. 247, 266
(1978). The common law also allows a plaintiff to sue when deprived of a
contractual entitlement—even absent measurable damages, *see, e.g.*,
*Helphenstine v. Downey*, 7 App. D.C. 343, 349-50 (D.C. 1895), and even when

6

the plaintiff had given up something vanishingly small to secure that entitlement, *see, e.g.*, *Lawrence v. McCalmont*, 43 U.S. 426, 452 (1844).

Similarly, individuals may sue for nominal damages when their constitutional rights are violated, without showing measurable economic harm. *Carey*, 435 U.S. at 266; *see also, e.g.*, *Amnesty Int'l, USA v. Battle*, 559 F.3d 1170, 1177-78 (11th Cir. 2009); *Jacobs v. Clark Cty. Sch. Dist.*, 526 F.3d 419, 426-27 (9th Cir. 2008); *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 651 (2d Cir. 1998). And the Supreme Court has also recognized both "spiritual" injuries, *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 154 (1970), and "[a]esthetic and environmental" injuries, *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972), as constitutionally cognizable.

Thus, for purposes of assessing standing, a plaintiff who has been deprived of a thousand dollars is no differently situated than one who has lost a chance to enjoy a favorite hiking spot, *see, e.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181-83 (2000), or one who has been denied access to records she has a right to receive, *see, e.g.*, *Pub.*

*Citizen*, 491 U.S. at 449-50. Each has lost something of value, and is therefore injured.

While many injuries are defined at common law, there is no necessary reason why Congress would be a less reliable indicator of injury than a court. To the contrary, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Spokeo*, 136 S. Ct. at 1549 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 580 (1992) (Kennedy, J., concurring)); *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) (same). As one district court in this Circuit recognized, because "legal rights reflect social judgments about where harm has and has not occurred," Congress, as the policy-making branch, is best positioned to make these judgments. *Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 630 (E.D. Va. 2016) (quoting Daniel Townsend, *Who Should Define Injuries For Article III Standing?*, 68 Stan. L. Rev. Online 76, 80-81 (2015)). By appending a separate "real" injury requirement onto a congressionally recognized entitlement, the panel opinion usurped Congress's acknowledged power to create new "legal rights, the invasion

8

of which creates standing." *Warth v. Seldin*, 422 U.S. 490, 500 (1975)

(quoting *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)); *see also Eldred*

*v. Ashcroft*, 537 U.S. 186, 204-05, 208 (2003) (stating that courts "defer

substantially" to Congress's recognition of a new entitlement's value and

"are not at liberty to second-guess" Congress's rational "determinations

and policy judgments"); *Lujan*, 504 U.S. at 578 (majority op.); *R.R. Ret. Bd. v.*

*Alton R.R. Co.*, 295 U.S. 330, 346 (1935).

## III.   The denial of information may create an injury even absent collateral consequences

The Supreme Court and this Circuit have long recognized that the

denial of information to which one is legally entitled constitutes a

cognizable injury, without any need to show collateral consequences. *See*

*Akins*, 524 U.S. at 21; *Pub. Citizen*, 491 U.S. at 449; *Doe v. Pub. Citizen*, 749

F.3d 246, 264 (4th Cir. 2014). In *Public Citizen v. U.S. Department of Justice*,

for example, the Court rejected a suggestion that plaintiffs seeking records

under a federal open-government statute must prove collateral

consequences:

9

> Our decisions interpreting [FOIA] have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records.

491 U.S. at 449. In *National Archives & Records Administration v. Favish*, the Court elaborated:

> A person requesting the information [under FOIA] needs no preconceived idea of the uses the data might serve. The information belongs to citizens to do with as they choose.

541 U.S. 157, 1772 (2004). And in *FEC v. Akins*, the Court held "that a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." 524 U.S. at 21.

In requiring an additional "real" injury, the panel here mistakenly read *Akins* and *Public Citizen* as limited to situations where the deprivation of information "adversely affected the plaintiffs' conduct." Slip op. at 16. That is not how *Spokeo* itself viewed these cases. The Court instead described *Akins* as "confirming that . . . voters' 'inability to obtain information' . . . is a sufficient injury in fact to satisfy Article III," *Spokeo*, 136 S. Ct. at 1549, and *Public Citizen* as "holding that two advocacy organizations' failure to obtain information subject to disclosure . . .

10

'constitutes a sufficiently distinct injury to provide standing to sue,'" *id.* at 1549-50.

*Spokeo*'s description of these cases is confirmed by the cases themselves: *Public Citizen* may have noted collateral consequences, but unequivocally stated that those consequences were irrelevant to the injury analysis. 491 U.S. at 449. And *Akins* identified the threat of collateral effects on plaintiffs' voting behavior to show that the plaintiffs were *particularly* injured by the defendant's failure, and had thus suffered more than a "generalized grievance."[4] 524 U.S. at 23-25. The *injury* that *Akins* found was not some resulting "real" harm but instead "consist[ed] of [plaintiffs'] inability to obtain information . . . the statute require[d]" to be made public. 524 U.S. at 21; *see also id.* at 22 (describing the plaintiffs' harm as "failing to

---

[4] The potential for collateral consequences to the plaintiff is relevant to whether an injury is particularized to the plaintiff in other contexts as well. For example, potential collateral consequences to the plaintiff may inform a court's analysis of whether the government's failure to adhere to a generally applicable procedural requirement particularly injures a plaintiff, or is instead a generalized grievance. *See, e.g., Summers v. Earth Island Inst.*, 555 U.S. 488, 496-97 (2009); *Lujan*, 504 U.S. 572-73.

receive particular information"). Where information about an individual is denied to that individual, this generalized grievance issue does not arise.

The panel's "real"-injury requirement would, moreover, often defeat the purpose of disclosure laws. Plaintiffs often bring disclosure cases to compel disclosures that have not yet occurred, rather than (as here) to seek damages for past nondisclosures. But if the plaintiff does not yet have the information, she may find it impossible to show that receiving it would change her behavior. After all, before receiving it, she cannot prove what it would reveal.

A person seeking to compel a company to disclose pollutant discharges, for example, does not know whether the company's discharges exceed permitted levels. A reporter seeking communications between an official and a lobbyist may not know whether the communications reveal corruption. But no such showing is required to compel disclosure. "The Supreme Court consistently has held that a plaintiff suffers an Article III injury when he is denied information that must be disclosed pursuant to a statute." *Doe*, 749 F.3d at 263. The panel's decision to require more—a

12

separate "real" harm—usurped Congress's role and imposed a

requirement inconsistent with precedent.[5]

## IV.    A plaintiff may demonstrate injury based on a risk of real harm

The panel's failure to recognize that "risk of real harm" may satisfy

the injury-in-fact test, *compare Spokeo*, 136 S. Ct. at 1549, *with* slip op. at 13,

threatens to confuse settled standing law regarding an array of statutory

enforcement schemes outside the disclosure context.

The distinction between a "'real' harm," slip op. at 13, and a "risk of

real harm," *Spokeo*, 136 S. Ct. at 1549, is important. Many laws recognize

that "[t]hreats or increased risk . . . constitute[] cognizable harm." *Friends of

the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160 (4th Cir.

2000) (en banc). Indeed, threats to the environment and health are often

---

[5] Several district courts in this Circuit have, since *Spokeo*, recognized Congress's power to identify new injuries, examining a statute's structure and purpose to determine whether Congress intended to create a substantive right or protect a substantive interest. *See, e.g.*, *Clark v. Trans Union, LLC*, No. 3:15CV391, 2016 WL 7197391, at *9-10 (E.D. Va. Dec. 9, 2016); *Allah-Mensah v. Law Office of Patrick M. Connelly, P.C.*, No. PX-16-1053, 2016 WL 6803775, at *7 (D. Md. Nov. 17, 2016); *Thomas*, 193 F. Supp. 3d at 630.

13

"by nature probabilistic." *Id.*; *see also Baur v. Veneman*, 352 F.3d 625, 633-34 (2d Cir. 2003) (noting the same for food and drug safety suits).

The Supreme Court has long held threats of environmental injury sufficient to support standing. For example, in *Monsanto Co. v. Geertson Seed Farms*, the Supreme Court ruled that a "reasonable probability" that organic crops would become contaminated with genetically engineered strains was sufficient injury to support standing to seek an injunction. 561 U.S. at 153-54 (internal quotation marks omitted). And in *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, the Court held that "uncertainty" about the effects of the release of even small amounts of radiation sufficed to support standing to challenge a statute that limited nuclear power plant liability. 438 U.S. 59, 74 (1978).

Disclosures are often required to reduce risks of harm. If an individual had to be diagnosed with cancer before she could enforce a safety standard or warning requirement regarding carcinogenic exposures, the purpose of the laws—to prevent that harm—would be defeated. If Congress likewise adopted credit reporting disclosure requirements

14

prophylactically, the panel's conclusion that consumers may not sue to compel disclosure until they experience resulting "real" harm would defeat that prophylactic purpose.

## CONCLUSION

The full Court should grant rehearing to correct the panel's decision and remove the confusion it will cause.

June 1, 2017                          Respectfully submitted,

                                     /s/ Michael E. Wall
                                     Michael E. Wall

                                     *Counsel for Amicus Curiae*
                                     *Natural Resources Defense Council*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 29(b)(4), counsel for

amicus curiae certifies that this brief contains 2598 words, based on the

"Word Count" feature of Microsoft Word 2016. Pursuant to Federal Rule of

Appellate Procedure 32(f), this word count does not include the words

contained in the cover page, corporate disclosure statement, table of

contents, table of authorities, signature blocks, certificates of counsel, or the

proof of service. Counsel also certifies that this document has been

prepared in a proportionally spaced typeface using 14-point Palatino

Linotype in Microsoft Word 2016.

June 1, 2017                                   /s/ Michael E. Wall
                                              Michael E. Wall
                                              *Counsel for Amicus Curiae*
                                              *Natural Resources Defense Council*

16

**CERTIFICATE OF SERVICE**

Counsel for amicus curiae certifies that on June 1, 2017, I
electronically filed the foregoing with the Clerk of the Court for the United
States Court of Appeals for the Fourth Circuit by using the CM/ECF
system. I certify that all participants in the case are registered CM/ECF
users and that service will be accomplished by the CM/ECF system.


June 1, 2017                         /s/ Michael E. Wall
                                     Michael E. Wall
                                     *Counsel for Amicus Curiae*
                                     *Natural Resources Defense Council*

17